IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HEIDI BARLOW and DOUG BARLOW, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> STATE FARM FIRE & CASUALTY ) <br> COMPANY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 5:25-cv-00044-R |

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR PROTECTIVE ORDER TO PRECLUDE SERVICE OF THIRD-PARTY SUBPOENA TO ACCENTURE LLP AND BRIEF IN SUPPORT**

This Motion is brought pursuant to Local Civil Rule 45.1(b), permitting a party to file a motion precluding service of a subpoena at all on any ground for which a protective order may be sought. Plaintiffs' Notice of Subpoena (the "Notice") to global consulting services firm Accenture LLP ("Accenture") is their latest attempt to obtain wide-reaching, disproportionate discovery that is irrelevant to the merits of this individual homeowners' case, and is an end-run around discovery motions and requests pending for decision before this Court and/or pending response by State Farm. The Notice seeks documents on nine broad topics regarding purported "industry standard relating to wind/hail claims" and Accenture's work with State Farm (the "Topics"), even though Accenture would not have and did not have any involvement in the handling of Plaintiffs' claim and concluded its consulting work for State Farm in July 2020—nearly three years prior to Plaintiffs' alleged date of loss. *See* Notice and Attached Subpoena, Dkt. Nos. 68 and 68-1. Moreover, the

Notice seeks numerous categories of State Farm's confidential business information—including claims data, indemnity information, and internal metrics and reports—that are nearly identical to discovery they served on State Farm just nine days prior to filing the Notice and relate more broadly to discovery motions pending before this Court which are stayed at Plaintiffs' suggestion. Plaintiffs have provided no justification for these duplicative requests. The fact that many of the Topics overlap with discovery requests that are the subject of pending motions before the Court—and all deadlines are currently stayed—further undermines the idea that Plaintiffs need this discovery from Accenture now. It is just more in a long line of indefensible discovery that burdens this Court as well as State Farm.

Finally, *even if* the Topics were relevant, they seek State Farm's confidential business information. As no protective order has been entered in this case because Plaintiffs have failed to respond, State Farm would suffer irreparable harm if the Court allowed the subpoena to be served and Accenture to respond without adequate confidentiality protections. Therefore, State Farm requests that the Court enter a protective order precluding service of the subpoena to Accenture at all, pursuant to LCvR45.1(b).

## BACKGROUND

### A. Factual Background

This lawsuit involves a limited dispute between State Farm and Plaintiffs, who claim $39,820.00 in contractual damages to their property to replace a roof, along with downspouts and gutters. Plaintiffs allege their house was damaged by a "devastating" windstorm on June 17, 2023, but they did not make a claim to State Farm until five months

later on November 12, 2023.[1] State Farm first inspected the property on November 15, 2023, finding 23 wind-damaged shingles along with minor hail damage to roof vents, gutters and downspouts. That resulted in a total estimate of $2,754.39. Application of Plaintiffs' $2,010.00 deductible along with depreciation brought the estimate below the deductible. However, $744.39 was available to Plaintiffs if the estimated repairs were completed.

Plaintiffs disagreed with State Farm's decision and asked for a second inspection; State Farm retained engineer Robin Cox from NV5 to perform that inspection. Unaware of State Farm's prior assessment in advance, Cox independently identified the same limited damage as State Farm. Thus, State Farm's decision remained unchanged.

Plaintiffs sued State Farm and Brent Hagar and the Hagar State Farm Agency (together, the "Agent") in the District Court of Oklahoma County, State of Oklahoma on December 6, 2024. They asserted claims against State Farm for breach of contract and breach of the duty of good faith and fair dealing; against the Agent for negligent procurement of insurance; and against all Defendants for constructive fraud and negligent misrepresentation. Pet., ¶¶ 45-79. Plaintiffs allege that State Farm and its agents are engaged in an enterprise-wide "scheme" to deny claims for full roof replacements, through various claims handling "tactics" wherein State Farm "misattributes" damage to noncovered losses and fails to disclose this "scheme" at policy inception or renewal. *See, generally, id.* ¶ 5. Sta

---

[1] Plaintiffs did not initially identify a date of loss. Thus, State Farm assigned August 6, 2023 as the date of loss because that was the closest date with any significant storm activity.

3

State Farm removed the case to this Court on January 10, 2025, on grounds the Agent was fraudulently joined to defeat federal jurisdiction. The Court denied Plaintiffs' Motion to Remand and dismissed Plaintiffs' claims against the Agent without prejudice, holding that the Agent was fraudulently joined, *see* Dkt. No. 32, Order at 10, and subsequently denied Plaintiffs' motion for reconsideration. *See* Dkt. No. 40, Order on Reconsideration at 4.

**B.    Procedural Background**

Plaintiffs have already served State Farm with abusive discovery in this matter—including 122 combined interrogatories, document requests, and requests for admission—much of which were objected to by State Farm and are currently the subject of Plaintiffs' pending Motion to Compel. Plaintiffs also served a Corporate Representative Notice on 30 topics, collectively encompassing 101 subparts, which is the subject of State Farm's pending Motion for Protective Order. Many of the discovery requests subject to the pending motions overlap with the Topics at issue in this Motion.

Following a conference before the Court on December 11, 2025, the Court held all deadlines in abeyance and instructed the parties to provide an update in 30 days. Dkt. No. 62. Nevertheless, on December 22, 2025, Plaintiffs served State Farm with four additional interrogatories for a total of 34 (well in excess of the 25 permitted without leave of the Court or agreement with opposing counsel) and ten new requests for production. These requests seek information and "all contracts" regarding State Farm's relationship with Accenture, various communications, analyses, data, and reports regarding "any industry standards regarding wind/hail claims and/or full roof replacements on wind/hail claims,"

4

"all documents" Accenture provided State Farm regarding wind/hail claims, and deposition transcripts from unrelated litigations that settled in 2024. Ex. 1, Pls.' 2nd Disc. Reqs. at 15-16.

On the night of December 31, 2025—just nine days after serving State Farm with additional discovery (and before State Farm was even required to respond)—Plaintiffs served the instant Notice of Subpoena, which contains nine requests for documents, many of which are nearly identical to the discovery sent to State Farm. *See* Ex. 2 (Chart comparing Notice to Plaintiffs' Second Discovery Requests).

- Topic No. 1: All documents with "industry standards[2]" relating to wind/hail claims and/or full roof replacements utilized in Accenture's work for State Farm.

- Topic No. 2: All documents related to Accenture's work on State Farm's Fire Model Enhancement, "Hail Focus Initiative," and any other "hail quality focus initiatives.

- Topic No. 3: Files, agreements, correspondence, and analyses regarding "industry standards relating to wind/hail claims" utilized in Accenture's work for State Farm.

- Topic No. 4: All documents "received or produced by [Accenture] for any consulting or other work related to industry standards or benchmarks relating to wind/hail claims and/or full roof replacements on wind/hail claims."

- Topic No. 5: All documents relating to "State Farm's performance on wind/hail claims and/or full roof replacements on wind/hail claims in relation to the industry standards outlined in Topics 1-4, including internal quality improvement and/or lowering State Farm's percentage of approvals for total roof replacements to the industry standard and/or to a related benchmark."

- Topic No. 6: All documents "ensuring that any industry standards relating to wind/hail claims ... identified in Topics 1-5 were accurate, vetted, and otherwise reflected actual claims and reliable data" with respect to work performed for State Farm.

---

[2] Despite using "industry standards relating to wind/hail claims" repeatedly in their Second Discovery Requests to State Farm and the Notice, Plaintiffs fail to define the term anywhere. Nor did counsel for State Farm refer to industry "standards" in Chambers as suggested by the requests. The reference was to data consistent with footnote 11 in State Farm's Response to Plaintiffs' Motion to Compel (Dkt. No. 53).

- Topic No. 7: All documents State Farm supplied to Accenture relating to wind/hail claims and/or full roof replacements on wind/hail claims.
- Topic No. 8: All documents related to "derivation of the industry standards relating to wind/hail claims" relating to work performed for State Farm.
- Topic No. 9: All contracts between State Farm and Accenture relating to industry standards relating to wind/hail claims.

## **ARGUMENT AND AUTHORITIES**

### I. **THE NOTICE IS PREMATURE, DUPLICATIVE, AND IMPROPERLY SEEKS STATE FARM'S CONFIDENTIAL INFORMATION WITHOUT A PROTECTIVE ORDER.**

#### A. **A Subpoena Must Comply with Rule 26 Relevance and Proportionality Standards.**

Rule 26(b)(1) governs the scope of permissible discovery under a subpoena, which—like all other discovery—must satisfy the threshold requirements of relevance and proportionality. *Ramirez v. Kay Cnty. Just. Facilities Auth.*, No. CIV-21-00971-JD, 2025 WL 3451857, at *6 (W.D. Okla. Dec. 1, 2025) (quashing nonparty subpoenas *sua sponte* because "[t]he discovery sought by these subpoenas wildly exceeds the scope of discovery permitted by Rule 26(b)(1)."); *Vermeer Mfg. Co. v. Toro Co.*, No. CIV-19-855-D, 2020 WL 1236312, at *2 (W.D. Okla. Mar. 13, 2020) ("'A subpoena served on a third party pursuant to Rule 45 of the Federal Rules of Civil Procedure is considered discovery within the meaning of the rules'.... Accordingly, considerations of both relevance and proportionality govern the Subpoenas at issue.") (quoting *Ward v. Liberty Ins. Corp.*, No. CIV-15-1390-D, 2018 WL 991546, at *1-2 (W.D. Okla. Feb. 20, 2018)). Federal Rule of Civil Procedure 45 authorizes the court to quash a subpoena in specific circumstances, including when an exception or waiver does not apply, or when the subpoena imposes an undue burden. *See id.*, Fed. R. Civ. P. 45(d)(3).

6

B.   **State Farm Has Standing to Challenge the Subpoena.**

A party has standing under Fed. R. Civ. P. 45(d)(3) to challenge a subpoena issued to a nonparty where the party claims a personal right or privilege with respect to the documents requested in the subpoena. *Jason Morgan Trucking, LLC v. Progressive Com. Ins.*, No. CIV-24-067-RAW-GLJ, 2025 WL 2062278, at *1 (E.D. Okla. July 23, 2025) (citing *E.E.O.C. v. Unit Drilling Co.*, No. 13–CV–147–TCK–PJC, 2014 WL 130551, at *3 (N.D. Okla. Jan. 13, 2014)). Courts have held that a party can demonstrate a "personal right" in various contexts, including where a subpoena seeks its financial information, customer information, or other confidential business information or trade secrets. *See e.g., Zurich Am. Ins. Co. v. Ascent Construction, Inc.*, No. 120CV00089DBBCMR, 2021 WL 7186068, at *2 (D. Utah June 2, 2021) (allowing defendant to challenge subpoena because it sought personal financial and banking records); *Dimitras v. Robert Brogden's Olathe Buick GMC, Inc.*, No. 13-2544-KHV, 2014 WL 4988072, at *2 (D. Kan. Oct. 7, 2014) ("Because the information requested from the nonparties includes defendants' own financial reports and confidential customer information, the court finds that defendants have a personal right with respect to the records requested from the subpoenaed banks. This right gives them standing to object to the issuance of the subpoenas."); *Peel Payments, LLC v. First Data Corp.*, No. CIV-16-0425-HE, 2016 WL 9049569, at *1 (W.D. Okla. Dec. 2, 2016) ("Specifically, the requested documents include information regarding confidential business negotiations, client lists, and other matters which fall under contractual confidentiality provisions and are protected trade secrets. The subpoenas command production of documents including client lists with current pricing, pricing

7

relative to First Data's services, all correspondence to and from First Data regarding the contractual agreement between First Data and NACS and any contractual negotiations between the two. First Data clearly has a personal right in the information such that it has standing to challenge its production."); *Orchestrate HR, Inc. v. Trombetta*, No. 3:13-CV-2110-P, 2014 WL 772859, at *3 (N.D. Tex. Feb. 27, 2014) (finding that "these allegations demonstrate a sufficient interest in the documents to establish Defendants' standing" where subpoena sought "information communicated between Defendants ... and [] non-parties, who work closely with Defendants on complex insurance agreements and coverage, and that the subpoenas require the non-parties to disclose trade secrets and confidential information.").

A Court is also empowered to exercise its inherent authority to limit irrelevant or non-proportional discovery requests, even in absence of standing. *Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2020 WL 972754, at *3 (N.D. Okla. Feb. 28, 2020) ("In cases where a moving party lacks standing to challenge a third-party subpoena, a court may exercise its inherent authority to limit irrelevant or non-proportional discovery requests pursuant to Federal Rule of Civil Procedure 26(b)(2)(C).") (citing Fed. R. Civ. P. 26(b)(2)(C)(iii)). *See also Jason Morgan Trucking, LLC*, 2025 WL 2062278 at *2 ("Moreover, even if Plaintiff did not have standing to quash the request for the requested information, the Court has the inherent authority to control discovery to determine whether the requested documents should be subject to discovery in this case.").

State Farm has standing to challenge Plaintiffs' Notice of Subpoena to Accenture because State Farm has "'a personal right or privilege with respect to the subject matter

8

requested in the [Notice].'" *Miller v. Legacy Bank*, No. CIV-20-946-D, 2023 WL 5002878, at *1 n.2 (W.D. Okla. Aug. 4, 2023) (quoting *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590 (D. Kan. 2003)). Here, it is apparent from the face of the Notice that State Farm has a personal interest in the subpoenaed information and documents, as it seeks wide swaths of detailed information about Accenture's work "performed ***for or on behalf of State Farm***," including "all" documents relating to "State Farm's performance on wind/hail claims," State Farm's Fire Model Enhancement,[3] and "any hail quality focus initiatives." *See* Notice and Attached Subpoena at 4, Dkt. No. 68. Such information encompasses numerous categories of State Farm's confidential business information, including claims data, claims handling guidelines, indemnity data, financial information, and other sensitive documents. *See e.g.*, *Hadley v. Kellogg Sales Co.*, No. 16-CV-04955, 2019 WL 12495009, at *2 (N.D. Cal. Dec. 12, 2019) (recognizing that creating an opportunity for competitors to access information reflecting business strategy and other competitive analyses "would provide [them] with an enormous benefit—to [the litigant's] detriment."); *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 2550831, at *1 (N.D. Cal. June 25, 2011) (finding "financial information and analysis" contained in presentation prepared by outside advisor "to be highly sensitive and confidential"); *Moses Enters., LLC v. Lexington Ins. Co.*, No. 3:19-CV-00477, 2020 WL 7634165, at *3–4 (S.D.W. Va. Dec. 22, 2020) (finding that AIG's insurance claims manuals were entitled to confidential treatment because "they provide very detailed, specific step-

---

[3] As further described below, the FME was an effort State Farm undertook beginning in early 2020 to improve claim handling accuracy.

9

by-step instructions that AIG has developed regarding its property and casualty insurance claims."). Thus, State Farm clearly has a personal right to challenge Plaintiffs' Notice. *See e.g.*, *Peel Payments*, 2016 WL 9049569 at *1; *Dimitras*, 2014 WL 4988072 at *2; *Orchestrate HR*, 2014 WL 772859 at *3.

### C. The Requested Discovery Is Premature and Duplicative of Discovery Sent to State Farm.

The Court should quash the Notice because, setting aside the irrelevance of the Topics as further detailed below, the requested discovery is not only premature but also an improper attempt to make an end-run around the limitations of discovery under the Federal Rules of Civil Procedure. First, the Topics overlap with discovery requests—including requests relating to the Fire Model Enhancement and what Plaintiffs refer to as the "hail quality focus initiative"—to which State Farm is objecting and are currently subject to a pending Motion to Compel and a separate Motion for Protective Order upon which the Court has yet to rule. Moreover, this Court has held all deadlines in abeyance for now while issues related to the pending discovery motions are considered elsewhere. Dkt. No. 62.

A subpoena to a non-party cannot be used to circumvent the normal limitations of discovery. *Ramey v. Cmty. State Bank, Coffeyville, Kansas*, No. 17-CV-370-JED-JFJ, 2018 WL 11447250, at *1 (N.D. Okla. Aug. 7, 2018) ("In other words, the rule permitting subpoenas of documents from nonparties does not permit a party to make an end-run around Federal Rule of Civil Procedure 34.") (granting motion to quash subpoena that plaintiffs attempted to use to obtain additional categories of documents from defendant and

10

circumvent Rule 34). Here, Plaintiffs improperly seek to circumvent the proprietary protections that State Farm has asserted by seeking these documents from an unsuspecting non-party who would not have been aware that State Farm has objected to producing this information and it is already the subject of pending motions, especially when there is no protective order. As such, at a minimum, the Court should preclude service of the subpoena, while deadlines for the parties are stayed and before it rules upon the pending motions. Dkt. No. 62.

Moreover, the discovery Plaintiffs seek from Accenture is nearly identical to the discovery Plaintiffs are simultaneously seeking from State Farm, separate and apart from the overlapping discovery subject to the pending motions and State Farm's timely objections. *See* Chart, Ex. 2. Although "there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party," it is inefficient and bad form for Plaintiffs to seek the ***same discovery*** from State Farm and non-party Accenture at the ***same time***. *Black Card, LLC v. VISA U.S.A., Inc.*, No. 15-CV-027-S, 2016 WL 7325684, at *3–4 (D. Wyo. May 9, 2016) (quoting *Coffeyville Res. Ref. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, No. 4:08MC00017 JLH, 2008 WL 4853620, at *2 (E.D. Ark. Nov. 6, 2008)). Indeed, "[c]ourts may refuse discovery requests aimed at nonparties in cases where the same testimony or documents could instead be obtained from a party to the action." *Id.*

(quoting *Simon v. Taylor*, No. CIV 12–0096 JB/WPL, 2014 WL 6633917, at *21 (D.N.M. Nov. 18, 2014)).[4]

### D. The Requested Discovery Is Irrelevant.

The Court should also preclude service of the subpoena for the compelling reasons State Farm outlined in its briefing on the pending Motion to Compel and Motion for Protective Order. *See* Dkt. No. 52, State Farm's Mot. for Protective Order and to Quash Notice of Rule 30(b)(6) Deposition; Dkt. No. 53, State Farm's Opp. to Pls.' Mot. to Compel. Specifically, the subpoena topics barely speak to any issues that might be considered relevant in this matter. This case involves a dispute over the extent of damages due to State Farm's evaluation of purported damage to Plaintiffs' roof, downspouts, and gutters. Plaintiffs' requests for discovery regarding, *inter alia*, Accenture's involvement in the Fire Model Enhancement and purported "industry standards" relating to its work with State Farm, have no connection to the merits of this homeowners' claim. The FME is an effort that State Farm first undertook to improve the accuracy of claim handling and to address both overpayment and underpayment of claims, including conducting additional training, improving file documentation, and increasing management involvement. State

---

[4] Both Rules 26 and 45 confirm this. Rule 26 states "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, **or can be obtained from some other source that is more convenient, less burdensome, or less expensive.**" Fed. R. Civ. P. 26(b)(2)(C) (emphasis added). Rule 45 states "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

Farm engaged Accenture in a limited role to assist with the FME in Spring and Summer 2020.

Plaintiffs have pled no facts that could explain how Accenture's involvement in Spring and Summer 2020—which ended nearly three years prior to Plaintiffs' alleged date of loss—relate to *how* State Farm adjusted Plaintiffs' specific claim. Subject to the entry of an approved protective order, State Farm is willing to produce the versions of Operation Guide 75-160 and relevant claim handling guidelines that were in place as of Plaintiffs' date of loss, which reflect the outcome of the work of the FME, which provides guidance to the actual claim personnel. Any additional FME-related information lacks a coherent or logical connection to the merits of this lawsuit. The crux of Plaintiffs' allegations is State Farm's decision as to the presence or absence of damage to their shingles. Pet. ¶ 40(a), (g)–(j). Sweeping, vague requests for documents and information related to "industry standards" and "wind/hail claims" to a non-party who ceased involvement more than three years before Plaintiffs even notified State Farm of their claim have no bearing on this issue. *See Cunningham v. Standard Fire Ins. Co.*, No. 07–cv–02538–REB–KLM, 2008 WL 2902621, at *5 (D. Colo. July 24, 2008) (refusing to require production of documents relating to increasing claim department productivity and profitability).

Although State Farm maintains that the additional discovery related to the FME is unwarranted, to the extent the Court is inclined to allow additional discovery, it should require Plaintiffs to review the discovery State Farm has agreed to produce *before* seeking the same or additional information from Accenture. *See Dimitras*, 2014 WL 4988072 at *3 ("After plaintiffs' counsel has had the opportunity to review defendants' production, if

13

they still wish to obtain documents from the nonparty financial institutions, they may do so by properly limiting the scope of their requests."); *Black Card, LLC v. VISA U.S.A., Inc.*, No. 15-CV-027-S, 2016 WL 7325684, at *3–4 (D. Wyo. May 9, 2016) (quashing subpoenas and instructing "Defendant must first seek such discovery from Plaintiff," but "not foreclosing the possibility of Defendant obtaining information from non-party American Express.").

### E.     No Protective Order Has Been Entered in This Case.

The Court should also enter a protective order ***precluding service of the subpoena*** because, as written, it seeks the disclosure of State Farm's confidential and trade secret information and there is currently no protective order in place in this matter, though State Farm proposed one long ago. *See* Fed. R. Civ. P. 45(d)(3)(B)(i) (permitting courts to quash or modify a subpoena if it requires the disclosure of "trade secret or other confidential research, development, or commercial information").[5] Plaintiffs' requests would require Accenture to produce, *inter alia*, the terms and conditions of agreements between State Farm and Accenture,[6] as well as State Farm's claims data—including reinspection results and indemnity payment information that encompasses some of State Farm's most confidential and proprietary information. *See e.g.*, *Finisar Corp. v. Nistica, Inc.*, No. 13-

---

[5] State Farm filed a Motion for Entry of Protective Order to govern information exchanged in discovery on December 19, 2025 (Dkt. No. 54).

[6] Although numerous courts have held that an existing protective order is sufficient to protect a party's confidential information produced pursuant to a Rule 45 subpoena, no such protective order exists in this case. *See Vermeer Mfg. Co.*, 2020 WL 1236312 at *7 ("The Stipulated Protective Order in the Underlying Case suffices to protect the information sought.").

14

CV-03345-BLF(JSC), 2015 WL 3988132, at *5 (N.D. Cal. June 30, 2015) (noting that courts "regularly" protect from public disclosure "contracts with third parties that contain proprietary and confidential business information); *Hadley*, 2019 WL 12495009 at *2; *Krieger*, 2011 WL 2550831 at *1. Discovery into such information in the absence of an adequate protective order would risk unauthorized disclosure to competitors and third parties who can use this information to their competitive advantage to the detriment of State Farm. Thus, the Court should preclude service of the subpoena because there is a legitimate interest in keeping this information confidential.

## CONCLUSION

For the reasons stated above, State Farm requests that the Court enter a protective order ***precluding service of the subpoena*** to Accenture pursuant to LCvR45.1(b).

Respectfully submitted,

/s/ *Paige A. Masters*
TIMILA S. ROTHER, OBA # 14310
PAIGE A. MASTERS, OBA # 31142
AMANDA M. FINCH, OBA #34650
**CROWE & DUNLEVY, PC**
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-7700
Facsimile: (405) 239-6651
timila.rother@crowedunlevy.com
paige.masters@crowedunlevy.com
amanda.finch@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT
STATE FARM FIRE AND CASUALTY
COMPANY**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of January 2026, I electronically transmitted the foregoing document to the Court Clerk using the ECF system of filing, which will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| **Reggie Whitten** | rwhitten@whittenburragelaw.com |
| **Michael Burrage** | mburrage@whittenburragelaw.com |
| **Blake Sonne** | bsonne@whittenburragelaw.com |
| **Hannah Whitten** | hwhitten@whittenburragelaw.com |
| **John S. Sanders** | jsanders@whittenburragelaw.com |
| **Jake Denne** | jdenne@whittenburragelaw.com |
| **George Gibbs** | ggibbs@gablawhers.com |
| **James Warner** | jwarner@nixlaw.com |

/s/ *Paige A. Masters*
Paige A. Masters