# EXHIBIT 1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HEIDI and DOUG BARLOW,<br><br>*Plaintiffs*,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>*Defendants*. | CIV-25-44-R<br><br>Hon. David L. Russell<br><br>*on removal from*<br>*District Court of Oklahoma County*<br>*CJ-2024-7829* |

**PLAINTIFFS' SECOND SET OF DISCOVERY REQUESTS TO DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY**

Plaintiffs hereby request, pursuant to Rules 26, 33, 34, and 36 of the Federal Rules of Civil Procedure, that You respond within thirty (30) days to these Discovery Requests. You are hereby required to file in the above-styled cause and serve upon the undersigned counsel at the address stated herein below your written answers to the following Interrogatories, which should be made fully, separately, and in writing under oath and signed by the person making them. You are required to permit inspection and copying at our expense of the Documents described in the following Requests for Production, which are in Your possession, custody, or control, at Whitten Burrage, 512 N. Broadway Ave., Suite 300, Oklahoma City, Oklahoma 73102, or at such other time and location as the parties may agree.

**INSTRUCTIONS**

1. These Discovery Requests are directed toward all information and Documents, within the descriptions set forth herein, which are known or available to You

1

through Your respective agents, representatives, or Persons authorized to act on Your behalf, including information contained in Documents in the custody, possession, or control of You, Your respective agents, representatives, or Persons authorized to act in Your behalf, or available to them upon reasonable inquiry, request, or demand, whether such Documents are maintained at a local, regional, territorial, or national location.

2. These Discovery Requests shall be deemed continuing pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure and require, without further request from Plaintiffs, additional and supplemental answers from You if, at any time between the time the answers to these Discovery Requests are served and time of trial, You obtain or acquire from any source any additional knowledge, information, or belief pertaining to the subject matter of any Discovery Request. Such supplementary responses and production shall be served and made seasonably, but not later than thirty (30) days after such additional information and/or Documents are acquired or discovered.

3. Wherever used herein, the singular shall be deemed to include the plural, and the plural shall be deemed to include the singular. The feminine shall be deemed to include the masculine and the masculine shall be deemed to include the feminine. The disjunctive "or" shall be deemed to include a conjunctive "and", and the conjunctive "and" shall be deemed to include the disjunctive "or", and each of the functional words "each", "every", "any", and "all" shall be deemed to include each of the other functional words. References to the past tense shall include the present and vice versa. Use of the word "including" or any form thereof shall be construed without limitation.

4. Where Discovery Requests cannot be answered in full, they shall be answered or responded to as completely as possible, and incomplete answers shall be accompanied by a specification of the reasons for the incompleteness of the answer and whatever knowledge, information, or belief is possessed with respect to each unanswered or incompletely answered Discovery Request.

5. If you object to the production of any Document for any reason, Your answer shall state whether Documents responsive to the specific Discovery Request exist. Additionally, if no Documents are responsive to a specific Discovery Request, Your answer shall state the same in response to that Discovery Request.

6. Where facts set forth in Your answers or responses or portions thereof are supplied upon information and belief, rather than actual knowledge, so state and specifically describe or identify the source or sources of such information and belief. If any estimate can reasonably be made in place of unknown information, set forth Your best estimate, clearly designated as such, in place of unknown information, and describe the basis upon which the estimate is made. If You cannot answer an Interrogatory in full after exercising due diligence to secure the information requested, so state and answer to the fullest extent possible, specifying Your inability to answer the remainder and stating whatever information or knowledge you have relating to the answered portion.

7. If any Document responsive to a Request for Production was, but is no longer in Your possession, custody or control, or in existence, state whether it (1) is missing or lost; (2) has been destroyed; (3) has been transferred to others; or (4) has been otherwise

disposed of, and in each instance explain the circumstances surrounding such disposition, as well as the date or approximate date thereof.

8.     Pursuant to Rule 34(b)(2)(E)(i) of the Federal Rules of Civil Procedure, You are required to produce any Documents requested as they are kept in the usual course of business, or, You shall organize and label them to correspond to the categories in the Requests. Additionally, all Electronic Documents must be produced in the format described in the ESI Protocol described below. Further, no document produced by Defendants shall contain any watermark that covers or obscures in any way any text of the document being produced.

9.     For all documents produced in response to these Discovery Requests, You are specifically instructed to not include any watermark on any such Document.

10.     If any document is withheld for any reason, including but not limited to any alleged claim or privilege or trade secret, or for any other permissible (under current Oklahoma law and/or Federal Rules of Civil Procedure) and recognized (under current Oklahoma law and/or Federal Rules of Civil Procedure) reason or objection, please provide a description of the document being withheld which includes the following:

    a.     The date of the document;

    b.     The author(s) of the document (including all Persons who may have participated in the development of the Document);

    c.     All recipients of the document (including anyone the document was directed to, forwarded to, blind-copied to, and/or otherwise received and/or reviewed by);

d.   All persons to whom copies of the document have been furnished;

e.   If stated in the document, the subject matter of the document;

f.   A complete description of the information and/or Document withheld that sufficiently describes the nature of the Documents, Communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable Plaintiffs to assess the applicability of the privilege or protection;

g.   The file and/or computer database in which the document is kept in the ordinary course of business; and

h.   The current custodian of the document.

11.   Unless otherwise limited or expanded, the geographical scope of these Discovery Requests encompasses all States of the United States in which You conduct business.

12.   Unless otherwise limited or expanded, the temporal scope of these Discovery Requests encompasses the Relevant Time Period.

## DEFINITIONS

The following definitions shall apply to these Discovery Requests:

1.   "**Action**" means the above-styled and cause numbered litigation.

2.   "**Address/Telephone Number**" means both the current business and residential address and telephone number Person(s) referred to in the specific Discovery Request.

5

3. **"Agent"** shall collectively mean Brent Hagar and Hagar State Farm Agency, LLC, its attorney(s), investigator(s), agent(s), or any other representative(s). All information is to be divulged which is in the possession, custody, or control of each individual or corporate party, including all information that is reasonably available to them.

4. **"Claim"** shall collectively mean and refer to all requests for indemnity to You (along with Documents supportive thereof), as described in the Action, whether submitted directly to You or through Agent, arising from the Dwelling and/or Policy.

5. **"Claim File"** shall mean the Documents You keep and maintain with respect to a claim for indemnity under a policy of insurance coverage You have issued, which include (but are not limited to):

    a.    Communications between You and insured;

    b.    Communications between Your Claims Handling Personnel;

    c.    claim diary or log;

    d.    reports prepared by You or anyone You retained to perform work on the claim (including any contractors or engineers);

    e.    witness statements;

    f.    adjuster's file;

    g.    field file and/or notes;

    h.    scope file and/or notes;

    i.    supervisor's file;

    j.    settlement summaries

    k.    internal policies, procedures, and/or manuals You used, referenced, or

relied upon in adjusting or paying the claim; and

l.  all Documents presented for authority requests or review requests.

The Claim File shall include (a) all electronic information You store relating to the respective claim in any claims-management software; (b) all Communications between You and the insured as well as any third-party relating to the claim; and (c) all information sent to and/or reviewed by any supervisor and/or claim consultant relating to the claim.

6.  **"Claims Handling Personnel"** means YOUR Employees or independent contractors performing work or services related to the receipt, response, adjustment, appraisal, handling of formal and informal disputes, and/or settlement homeowners claims in Oklahoma. It shall include (but not be limited to) YOUR adjusters, claims handlers, supervisors, and consultants

7.  **"Communication(s)"** shall refer to any message sent or received orally, in writing, or via technology (including but not limited to telephone, text or instant messaging system(s), social media platform(s), e-mail(s), and/or facsimile). It shall include any attachments and/or metadata included in said message.

8.  **Cost/Benefit Analysis** means any cost/benefit analysis, return-on-investment analysis, financial impact analysis, requests for proposal, return-on-investment analysis, or any other similarly named or synonymous type of documentary analysis that compares the cost of an initiative to the value of its outcome.

9.  **"Custodian(s)"** refers to the Person(s) having possession, custody, or control of the Document or information requested in the specific Discovery Request.

10. **"Document(s)"** shall have the same meaning assigned to it in Rule

7

34(a)(1)(A) and shall include (but is not limited to) all materials described in the definition of **"writing"** as set forth herein as well as any form of electronic communication, however generated or stored, such as e-mail, which is capable of being copied. The term **"Document"** includes, but is not limited to the following: every original (and every copy of any original or copy which differs in any way from any original) of every writing of every kind or description, whether handwritten, typed, drawn, sketched, printed or recorded, by any physical, mechanical, or electronic means, including but not limited to accounting records, affidavits, bills, books, calendars, checks, check stubs, contracts, including all policies of insurance and draft policies, diaries, notes, photographs, receipts, reports, tape recordings, tax returns, telephone bills, and all materials within or upon which appear any writing or utterance, whether handwritten, typewritten, printed, transcribed, taped, recorded, filmed, punched, or produced by any other mechanical or electronic system of reproduction, and shall include each Document known to Defendant, its attorneys, and its agents.

11.  **"Dwelling"** shall refer to a residence, home, house, dwelling, and/or other structures.

12.  **"Dwelling Policy"** refers to any policy of insurance written by any Defendant providing coverage for physical loss or damages to a Dwelling. It shall include Plaintiffs' Homeowners' policy of insurance, or other policy of insurance providing insurance for Plaintiffs' Dwelling at the time of the loss that is the subject of this Action, and was issued by You or anyone acting on Your behalf, including but not limited to all summary(ies) of changes, declaration page(s), deductible disclosures, Definitions, identification of any additional insured(s), endorsement(s), consumer bill of rights, and notices. **"Dwelling**

**Policy**" shall have the same definition as provided in Plaintiffs' operative Petition.

13. "**Employee**" shall refer to all employees, past and present, affiliated in any way with any Defendant.

14. "**Engineering Services**" shall mean any service or creative work, the adequate performance of which requires engineering education, training and experience in the application of special knowledge of the mathematical, physical and engineering sciences to such services or creative work as consultation, investigation, evaluation, planning and design of engineering works and systems, planning the engineering use of land and water, teaching of advanced engineering subjects or courses related thereto, engineering research, engineering surveys, engineering studies, and the inspection or review of construction for the purposes of assuring compliance with drawings and specifications; any of which embraces such services or work, either public or private, in connection with any utilities, structures, buildings, machines, equipment, processes, work systems, projects, and industrial or consumer products or equipment of a mechanical, electrical, chemical, environmental, hydraulic, pneumatic or thermal nature, insofar as they involve safeguarding life, health or property, and including such other professional services as may be necessary to the design review and integration of a multidiscipline work, planning, progress and completion of any engineering services.

15. "**Expert**" shall mean a person skilled through education, training and experience in a particular field or vocation.

16. "**Identify**" or "**Identification**,"

    a. when used in reference to a corporation, firm or other entity, means

9

      its full name, form of organization, and its present or last known Address/Telephone Number;

b. when used in reference to a meeting or conference, means to state the date of the meeting or conference, the place of the meeting or conference, the full name and the present or last known position, business affiliation and Address/Telephone Number of each Person attending the meeting or conference;

c. when used in reference to a telephonic Conversation, means to state the full name, business affiliation and business address at the time, present or last known position and business affiliation and Address/Telephone Number of each party to the telephonic Conversation, the location of each such party at the time the telephonic Conversation took place, which of the parties initiated the telephonic Conversation, and when such telephonic conversation took place; and

d. when used in reference to a Writing, means a description of that writing in a manner sufficient for a subpoena duces tecum or for production pursuant to the Federal Rules of Civil Procedure. Also provide its present location or Custodian. If any such Writing was, but no longer is, in your possession or control, state what disposition was made of it, the date thereof, the Person responsible for making the decision as to such disposition, and the Person responsible for carrying out such disposition;

e. when used in reference to an oral Conversation other than telephonic Conversation, means to state when such Conversation took place, where such Conversation took place, and the full name and present or last known position and business affiliation and residential address of each party to such conversation.

f. when used with reference to an individual natural Person, means to state his or her full name, Residential Address, and present or last known position and business affiliation;

17. **"Indemnity Agreement"** shall mean any contractual agreement under which any Person or entity agrees to compensate You for a loss, or under which You agree to compensate any Person or entity for a loss.

18. **"Party"** shall mean collectively or individually any **"Plaintiff," "Defendant,"**

10

and/or "**Agent**," as those terms are defined herein.

19.     "**Person**" shall refer to any natural person, firm, association, partnership, corporation, or other form of legal business entity.

20.     "**Petition**" shall refer the Petition filed in this Action.

21.     "**Plaintiff(s)**" shall refer to the named Plaintiff(s) in this Action.

22.     "**Relating to**" a subject shall mean any documents constituting or comprising that subject, and any document identifying, referring to, dealing with, commenting upon, describing, summarizing, analyzing, explaining, detailing, outlining, defining, interpreting, or pertaining to that subject.

23.     "**Relevant Time Period**" shall mean the time period from 2010 to the date Discovery Requests are answered or supplemented.

24.     "**You**," "**Your**," and "**Yourself**" shall refer to Defendant State Farm Fire & Casualty Company ("State Farm"), as well as:

       a.     all Persons acting on behalf of or purporting to act on behalf of State Farm. (including but not limited to agents, representatives, attorneys, insurance carriers, experts, and consultants);

       b.     all Persons acting on behalf of or purporting to act on behalf of any subsidiary of State Farm;

       c.     all Persons acting on behalf of or purporting to act on behalf of any merged or acquired predecessors, successors, and/or divested facilities, divisions, or subsidiaries of State Farm; and

       d.     all Persons serving or having served on any governing board of any State Farm.

## **ESI PROTOCOL**

**Additional Definitions:**

1.　All definitions provided in the Discovery Requests to which this Exhibit are incorporated as if fully set out in this Exhibit.

2.　**"Electronically Stored Information"** (*i.e.*, "ESI") is defined as files, Documents, or other data that are stored on computers, file servers, disks, or other reasonably accessible devices or media.

**ESI Production:**

1.　Defendant shall produce all documents in accordance with the ESI Protocol provided contemporaneously herewith.

2.　To the extent Defendant objects to Plaintiffs' requested form of production, Defendant shall so state and advise of the specific format of production (*i.e.*, JPEG, TIFF+, etc.) that Defendant believes to be a reasonably usable format. A mere promise to produce documents in an unidentified "reasonably usable format" shall not constitute a valid objection to Plaintiffs' requested format. Additionally, a promise to produce documents in "imaged format" lacks the requisite specificity to inform Plaintiffs of Defendant's intended format.

3.　Should Defendant refuse to produce documents in the format requested, Plaintiffs specifically reserve the right to seek entry of their ESI Protocol and seek re-production of documents in their native format, as defined in the ESI Protocol.

## **PROTECTIVE ORDER**

1.    Defendant has made a regular practice of refusing to produce documents without the prerequisite entry of a blanket protective order.

2.    Plaintiffs do not agree any information sought herein requires Defendant to divulge information that is confidential or trade secret, nor do Plaintiffs agree to the propriety of a blanket protective order in any case.

3.    Should Defendant refuse to produce documents without the entry of a protective order, however, Plaintiffs have provided a protective order contemporaneously herewith. By providing the same, Plaintiffs do not waive their right to challenge Defendant's claims of trade secret or confidentiality, nor are Plaintiffs agreeing to the necessity or propriety of a blanket protective order in this action.

## **INTERROGATORIES**

**INTERROGATORY NO. 31.** Identify the industry standards regarding wind/hail claims and/or full roof replacements on wind/hail claims identified by counsel for State Farm at the Status Hearing on December 11, 2025 before Judge Russell, including what are the standards, where such standards are published, when were such standards identified and for what timeframe and geographical location, which insurance companies data were used or were otherwise relied upon in creating such standards, and why such standards were sought, created, or provided to or by State Farm.

**INTERROGATORY NO. 32.** Identify and describe the role of Accenture, or any of its affiliates, or any other third party in identifying the industry standards regarding wind/hail claims and/or full roof replacements on wind/hail claims, including standards identified by counsel for State Farm at the Status Hearing on December 11, 2025 before Judge Russell and the role of Accenture, or any of its affiliates, or any other third party in consulting, research, and other work with State Farm on the identification, development, and/or reliance by State Farm on such industry standards.

**INTERROGATORY NO. 33.** Identify and describe State Farm's performance in relation to any industry standards regarding wind/hail claims and/or full roof replacements on wind/hail claims, including standards identified by counsel for State Farm at the Status Hearing on December 11, 2025 before Judge Russell both before and after the FME team implemented its tactics and Kick Off in Dallas in 2020 and subsequent introduction into Oklahoma by 2021.

**INTERROGATORY NO. 34.** Identify and describe Your actions and analysis, including models, data used, the output relied upon, data sent to Accenture or any of its affiliates, and the supporting documentation relied upon to ensure that any industry standards regarding wind/hail claims and/or full roof replacements on wind/hail claims, including standards identified by counsel for State Farm at the Status Hearing on December 11, 2025 before Judge Russell, were accurate, vetted, and otherwise reflected actual claims and reliable data.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 45:** Produce the industry standards and/or other standards or benchmarks relating to wind/hail claims and/or full roof replacements on Wind/Hail claims that You relied on and/or utilized in any way with respect to, regarding, or relating to (i) Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives, (ii) implementation of Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Dallas County, Texas; (iii) implementation of Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Texas; (iv) implementation of Fire Model Enhancement -Wind/Hail, the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative and/or Hail Initiative and/or any hail quality focus initiatives in Oklahoma; (v) claims handling tactics or rules used related to such initiatives or plans; (vi) Fire Model Enhancement Guidelines; (vii) tracking of indemnity savings, tracking of the total or full roof replacement to partial roof replacement ratio, tracking of full roof replacement approval percentages, and/or tracking of total roof payment volume on wind/hail claims; and/or (viii) a standard percentage of Full Roof Replacements to Your internal standard on percentage of Full Roof Replacements; and/or (ix) any opportunity for internal quality improvement by seeking to lower Your percentage of approvals for full roof replacements to the industry standard and/or to a related benchmark.

**REQUEST FOR PRODUCTION NO. 46:** Produce Your files, including reports, analyses, analytics and data, agreements with third-parties, scopes of work, correspondence, and results and/or analysis regarding the industry standards relating to wind/hail claims and/or full roof replacements on wind/hail claims, including standards identified by counsel for State Farm at the Status Hearing on December 11, 2025 before Judge Russell.

**REQUEST FOR PRODUCTION NO. 47:** Produce all documents received or produced by Accenture, or any of its affiliates, and/or any other third party for any consulting or other work related to the industry standards relating to wind/hail claims and/or full roof replacements on wind/hail claims, including standards identified by counsel for State Farm at the Status Hearing on December 11, 2025 before Judge Russell, including but not limited to reports, analyses, analytics and data, agreements, scopes of work, correspondence, and results and/or analysis by Accenture and/or any other third party.

**REQUEST FOR PRODUCTION NO. 48:** Produce all documents relating to State Farm's performance on wind/hail claims and/or full roof replacements on wind/hail claims in relation to the industry standards identified in Interrogatories No. 31

and Requests for Production 45-47 both before and after the FME team implemented its tactics and Kick Off in Dallas, Texas in 2020 and subsequent introduction into Oklahoma by 2021, including internal quality improvement and/or lowering Your percentage of approvals for full roof replacements to the industry standard and/or to a related benchmark.

**REQUEST FOR PRODUCTION NO. 49:** Produce all documents ensuring that any industry standards relating to wind/hail claims and/or full roof replacements on wind/hail claims identified in Interrogatory No. 31 and Requests for Production 45-47 both before and after the FME team implemented its tactics and Kick Off in Dallas, Texas in 2020 and subsequent introduction into Oklahoma by 2021 were accurate, vetted, and otherwise reflected actual claims and reliable data.

**REQUEST FOR PRODUCTION NO. 50:** Produce all documents, reports, data used, models, output relied upon, and other documentation that State Farm supplied to Accenture, or any of its affiliates, and/or any other third party for any consulting or other work related to the industry standards relating to wind/hail claims and/or full roof replacements on wind/hail claims, including standards identified by counsel for State Farm at the Status Hearing on December 11, 2025 before Judge Russell.

**REQUEST FOR PRODUCTION NO. 51:** Produce all documents, reports, data used, models, and other documentation relating to Accenture's (or any of its affiliates) derivation of the industry standards relating to wind/hail claims and/or full roof replacements on wind/hail claims, including the standards identified by counsel for State Farm at the Status Hearing on December 11, 2025 before Judge Russell.

**REQUEST FOR PRODUCTION NO. 52:** Produce all contracts, agreements, and/or scopes of work between State Farm and Accenture's (or any of its affiliates) relating to industry standards relating to wind/hail claims and/or full roof replacements on wind/hail claims, including the standards identified by counsel for State Farm at the Status Hearing on December 11, 2025 before Judge Russell.

**REQUEST FOR PRODUCTION NO. 53:** Produce the deposition transcript and all exhibits attached thereto of Nicole Manduca taken on April 23, 2024 in *Nida v. State Farm et al.*, CJ-2020-4453, District Court of Oklahoma County, Oklahoma.[1]

**REQUEST FOR PRODUCTION NO. 54:** Produce the deposition transcript and all exhibits attached thereto of Thomas Moss taken on August 17, 2023 in *Barnett v. State Farm et al.*, CJ-2020-141, District Court of Grady County, Oklahoma.

---

[1] The same transcripts of the depositions of Nicole Manduca and Thomas Moss requested herein were ordered to be produced by the Hon. Jeff Virgin in *Lyle v. State Farm et al.*, CJ-24-183 (Cleveland Co.) April 7, 2025 Order.

16

Respectfully submitted,

*Blake Sonne*
--------------------------------
Reggie N. Whitten, OBA No. 9576
Michael Burrage, OBA No. 1350
Blake Sonne, OBA No. 20341
Hannah Whitten, OBA No. 35261
John S. Sanders, OBA No. 34990
Jake Denne, OBA No. 35097
**WHITTEN BURRAGE**
512 North Broadway Avenue, Suite 300
Oklahoma City, OK  73102
Office:              405.516.7800
Facsimile:    405.516.7859
rwhitten@whittenburragelaw.com
mburrage@whittenburragelaw.com
bsonne@whittenburragelaw.com
hwhitten@whittenburragelaw.com
jsanders@whittenburragelaw.com
jdenne@whittenburragelaw.com
&
George Gibbs, OBA #11843
2021 South Lewis Avenue, Ste 410
Tulsa, Oklahoma 74104
918-587-3939  Telephone
918-582-5504  Facsimile
Email: ggibbs@gablawyers.com
**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of December 2025, a true, correct, and exact copy of the foregoing document was emailed and/or mailed to the following persons:

Timila S. Rother
Amanda M. Finch
**CROWE & DUNLEVY, PC**
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, OK 73102
timila.rother@crowedunlevy.com
amanda.finch@crowedunlevy.com

*Blake Sonne*