IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HEIDI and DOUG BARLOW, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No.: CIV-25-00044-R |
| | ) |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
MOTION FOR PROTECTIVE ORDER AND TO QUASH AND/OR STAY
DEPOSITION NOTICE OF NICOLE MANDUCA AND BRIEF IN SUPPORT**

Defendant State Farm Fire and Casualty Company ("State Farm") respectfully moves for a protective order and to quash Plaintiffs' December 29, 2025 Notice to Take Oral & Video Deposition of Nicole Manduca, a Claims Manager in State Farm's Property & Casualty department, who had no involvement in the handling of Plaintiffs' insurance claim (the "Manduca Notice") (Dkt. #67). In issuing the Manduca Notice, Plaintiffs have failed to identify any claim-specific documents or testimony—or articulate any basis at all—that would justify their demand to depose Ms. Manduca. Other than a request on October 10, 2025, to which State Farm responded on October 16 with available dates but received no response, Plaintiffs have not pursued depositions of the individuals *who were actually involved in* handling their insurance claim. Thus, while State Farm disputes Ms. Manduca has any unique, relevant, or proportional information, taking her deposition is at the very least premature until and unless Plaintiffs can "describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Schultz*

*v. Sentinel Ins. Co., Ltd.* No. 4:15-CV-04160-LLP, 2016 WL 3149686, at *3 (D.S.D. June 3, 2016) (citing *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972)). They have not done so.

Absent any such articulation, Plaintiffs' demand to depose Ms. Manduca can only be based on mere speculation that she *may* possess some useful information. But "[m]ere speculation that information might be useful will not suffice." *Id.* Plaintiffs should not be allowed to depose Ms. Manduca without any evidence or indication that she possesses unique, relevant, and proportional information about the handling of Plaintiffs' insurance claim. This Court should quash the Manduca Notice and enter a protective order.

## BACKGROUND

1. This case arises from a disputed insurance claim where the alleged contract damages are $39,820.00 to replace a roof along with downspouts and guttering. Plaintiffs allege their house was damaged by a "devastating" windstorm on June 17, 2023, but they did not make a claim to State Farm until November 12, 2023.[1] State Farm first inspected the property on November 15, 2023, and found 23 wind-damaged shingles along with minor hail damage to roof vents, gutters and downspouts. That resulted in a total estimate of $2,754.39. Application of Plaintiffs' $2,010 deductible along with depreciation brought the estimate below the deductible. However, $744.39 was available to Plaintiffs if the estimated repairs were completed.

2. Plaintiffs sued State Farm, Brent Hagar, and the Hagar State Farm Agency

---

[1] Plaintiffs did not initially identify a date of loss. Thus, State Farm assigned August 6, 2023 as the date of loss because that was the closest date with any significant storm activity.

2

("Hagar Agency," together with Hagar, the "Agent"). They sued State Farm for breach of contract and breach of the duty of good faith and fair dealing; sued the Agent for negligent procurement of insurance; and sued both Defendants for constructive fraud and negligent misrepresentation. Pet., ¶¶ 45-79.

3. Plaintiffs allege that State Farm and its agents are engaged in an enterprise-wide "scheme" to deny claims, particularly full roof replacements, through *inter alia*, various claims handing "tactics" wherein State Farm "misattributes" damage to non-covered losses and fails to disclose this "scheme" at policy inception or renewal. Plaintiffs also allege Agent was engaged in an underwriting scheme. *See, generally, id.*

4. The Court dismissed Plaintiffs' claims against the Agent without prejudice, holding that the Agent was fraudulently joined. *See* Dkt. #32, Order at 10. Plaintiffs' motion for reconsideration was denied. *See* Dkt. #40, Order on Reconsideration at 4.

5. Plaintiffs have propounded dozens of discovery requests, including 54 requests for production, 34 interrogatories (in violation of the 25-interrogatory limit of Fed. R. Civ. P. 33(a)(1)), and 30 requests for admission (in violation of LCvR 36.1), and have also issued a notice seeking the deposition testimony of a State Farm corporate representative on 30 topics with collectively 101 subparts—most of which have no connection to the merits of this case.

6. To date, State Farm has produced 620 pages of claim-specific documents, including the Policy, claim file, and basic underwriting information. It will also produce relevant claim-handling guidelines, training materials, and performance evaluations of the employed claim handlers involved—once an appropriate protective order is in place.

7. As relevant here, Ms. Manduca is a Claims Manager in Property & Casualty for State Farm—several levels above the claims specialists who handled Plaintiffs' insurance claim—and she was not involved in the investigation, evaluation, or decisions regarding Plaintiffs' insurance claim. Indeed, as part of her role and responsibilities, Ms. Manduca, who does not reside in Oklahoma, does not evaluate individual insurance claims or have responsibility for substantively managing the adjustment of individual homeowners' claims in Oklahoma.

8. Nonetheless, instead of taking the logical (and only defensible) step of exploring the knowledge of individuals close to the events underlying their insurance claim, Plaintiffs have noticed the deposition of Nicole Manduca, who was not involved in Plaintiffs' insurance claim.

## ARGUMENTS AND AUTHORITY

### I. THE MANDUCA NOTICE SHOULD BE QUASHED BECAUSE HER TESTIMONY IS IRRELEVANT AND DISPROPORTIONATE TO THE NEEDS OF THE CASE.

The Court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *see also* Fed. R. Civ. P. 26(b)(2)(C) (allowing the Court to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that … the proposed discovery is outside the scope permitted by Rule 26(b)(1)"); *Capitol Records, Inc. v. Foster*, No. Civ. 04-1569-W, 2007 WL 9710830, at *1 (W.D. Okla. Apr.

4

10, 2007) ("It is well established that trial courts have broad discretion in issuing protective orders and determining what degree of protection is required.").

Rule 26(b)(1) allows parties to obtain "discovery regarding any nonprivileged matter that is ***relevant*** to any party's claim or defense ***and proportional*** to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). Information is "relevant" if it has a "tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Fed. R. Evid. 401. Relevance is not simply assumed: "[w]hen the request is overly broad, or relevance is not clear, the party seeking the discovery has the burden to show the relevance of the request." *Stainsby v. Okla. ex rel. Okla. Health Care Auth.*, No. CIV-21-1073-D, 2022 WL 1748263, at *1 (W.D. Okla. May 31, 2022). Nor does a "plaintiff's broad theory of the case ... necessarily justify broad discovery," and courts should thus endeavor to "thwart fishing expeditions." *Willis v. Johnson*, No. CIV-18-323-D, 2021 WL 8446071, at *2 (W.D. Okla. May 20, 2021); *see also Ross v. Univ. of Tulsa*, No. 14-CV-484-TCK-PJC, 2015 WL 13622518, at *1 (N.D. Okla. Apr. 24, 2015).

Proportionality is as critical as relevance to discoverability. Fed. R. Civ. P. 26(b)(1). In fact, "the proper scope of discovery is that which is both relevant to the claims or defenses and proportional to the needs of the case, considering the various factors." *Dodd v. Indian Health Care Res. Ctr. of Tulsa, Inc.*, No. 24-CV-00327-SH, 2024 WL 4648150, at *2 (N.D. Okla. Nov. 1, 2024) (emphasis in original).[2] Here, as set forth below, the Court

---

[2] These factors include: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the

5

should quash the Manduca Notice because it seeks irrelevant information that is designed to harass and impose unreasonable burdens and expense on State Farm, and it is disproportionate to the needs of the case.

### A. Plaintiffs Have Not Demonstrated the Relevance of the Testimony They Seek.

Plaintiffs have not established that the deposition testimony of Ms. Manduca would be relevant to their claims. Nor can they. The Petition makes clear that Plaintiffs are complaining about State Farm's purported conduct in connection with Plaintiffs' Policy and insurance claim—i.e., the terms and application of the Policy and what State Farm said (or did not say) to Plaintiffs.[3] But Ms. Manduca did not have any involvement in the investigation, evaluation, or decisions made by State Farm regarding Plaintiffs' insurance claim. And Plaintiffs have not demonstrated that Ms. Manduca has information regarding any of the claims asserted in their Petition. Indeed, as a Claims Manager, Ms. Manduca does not have responsibility for substantively managing the adjustment of *any* individual

---

parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1).

[3] *See, e.g., Smith v. Am. Nat'l Prop. & Cas. Co.*, 508 F. Supp. 3d 1048, 1061 (N.D. Okla. 2020) ("The duty of an insured to 'read and know the contents of the [insurance] policy before he accepts it' is well established-under Oklahoma law.") (quoting *Badgett v. Okla. Life Ins. Co.*, 54 P.2d 1059, 1062 (Okla. 1935)); *Thurston v. State Farm Mut. Auto. Ins. Co.*, 478 P.3d 415, 421 (Okla. 2020) (refusing to waive insured's duty to read his insurance policy and rejecting insured's argument to instead apply his "reasonable expectations" of what the policy covered); *Estrada v. Kriz*, 345 P.3d 403, 408 (Okla. Civ. App. 2015) (stating that "an averment of fraud only exists where there is some 'false suggestion or suppression of the truth' ....").

insurance claims. She also has a different role and is several levels above those who actually handled Plaintiffs' insurance claim—i.e., those persons who *could* testify as to the investigation that led to State Farm's claim determination. Meanwhile, despite State Farm offering deposition dates months ago, Plaintiffs have not scheduled the depositions of the individuals who actually investigated and evaluated Plaintiffs' insurance claim.

Plaintiffs' attempt to depose an individual with no involvement in their insurance claim suggests Plaintiffs are trying to advance their unfounded theories regarding a purported enterprise-wide "scheme" to deny policyholders' insurance claims. But such far-reaching allegations—which Plaintiffs' counsel has copied in identical fashion in dozens of cases—do not justify deposing Ms. Manduca absent a logical, coherent showing that a purported scheme had an impact on Plaintiffs' insurance claim, and that Ms. Manduca herself has specific knowledge of that impact on the single at-issue insurance claim. *Johnson*, 2021 WL 8446071 at *2 (stating that a "plaintiff's broad theory of the case does not necessarily justify broad discovery"). Plaintiffs cannot establish that the testimony they seek from Ms. Manduca is relevant to this dispute, and the Court should quash the Manduca Notice for this reason alone—at minimum, until Plaintiffs have deposed those persons with actual involvement in the handling of Plaintiffs' insurance claim and Plaintiffs show any ability to tie their insurance claim result to their broader scheme allegations.

To the extent Plaintiffs seek to depose Ms. Manduca based on her involvement with the Wind/Hail Fire Model Enhancement ("FME")—an effort State Farm first undertook in 2020 to improve consistency in handling wind/hail claims through training and documentation, and which addressed both overpayment and underpayment of insurance

7

claims—they have failed to articulate a connection between the FME and the claim decision they challenge in this lawsuit. The claims here involve a dispute as to whether and to what extent a part of Plaintiffs' house was damaged, and Plaintiffs have not explained how any testimony regarding the FME that Ms. Manduca could provide is probative of the reasonableness of State Farm's claim handling and decision under the facts of this case, or whether Plaintiffs' property, and which parts, were in fact damaged by wind and/or hail. Nor could they, as they have not deposed anyone involved in the claim. Thus, while State Farm disputes Ms. Manduca has any unique, relevant, or proportional information, taking her deposition is at the very least premature until and unless Plaintiffs can demonstrate that the FME is relevant to their claims.

### B.  The Deposition of Ms. Manduca Is Not Proportional to the Needs of the Case.

Even assuming Plaintiffs could satisfy their burden of showing relevance, the Court should quash the Manduca Notice because Ms. Manduca's testimony is disproportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).[4] This is a single homeowner's case involving a dispute over damages to a *single* Oklahoma property, yet Plaintiffs are

---

[4] *See also Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010) ("Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."); *Chrisman v. Bd. of Cnty. Commissioners of Oklahoma Cnty.*, No. CIV-17-1309-D, 2020 WL 7033965, at *3 (W.D. Okla. Nov. 30, 2020) ("While the scope of discovery is broad, it is not unlimited and is further defined by proportionality considerations. A plaintiff's broad theory of the case does not necessarily justify broad discovery. Further, courts should thwart fishing expeditions.") (internal cites omitted).

8

demanding that Ms. Manduca prepare for and appear for deposition despite ***never touching*** the insurance claim at issue. And as noted above, Plaintiffs have not deposed anyone with personal knowledge of the facts that they need to prosecute their claims. The Manduca Notice is an improper fishing expedition that this Court should quash.

*Evans v. Allstate Insurance Co.* is instructive. In *Evans*, the plaintiffs sued Allstate, alleging it improperly denied their fire loss claim, and sought to depose three of its officers. *See* 216 F.R.D. 515, 516 (N.D. Okla. 2003). Allstate contended that the corporate officers whom the plaintiffs sought to depose had no unique personal knowledge of the matters at issue and that the requests were burdensome, irrelevant, and propounded solely for the purpose of harassment and abuse. *Id.* at 518. Allstate also stated that the plaintiffs had taken the depositions of all adjusters and supervisors involved in the handling of the plaintiffs' insurance claim. *Id.* In response, the plaintiffs argued the depositions were necessary to prove their theory that a pervasive practice of inadequate supervision over Allstate claims adjusters existed within the corporation. *Id.* Considering both parties' positions, the court found that even if the plaintiffs had a right to explore those themes, Allstate had already provided adequate information, or that the information could be obtained from other sources without the depositions of the officers sought. *Id.* Accordingly, the Northern District granted Allstate's motion for a protective order prohibiting the depositions of the officers. *Id.*

Like the officers in *Evans*, Ms. Manduca has no unique personal knowledge of the facts and circumstances surrounding Plaintiffs' insurance claim. Indeed, Ms. Manduca does not even manage those who ***were*** substantively involved in the investigation and determination of Plaintiffs' insurance claim or any other claim handlers for that matter. To

9

the extent Plaintiffs seek discovery regarding their allegations that the adjusters were influenced by some nefarious "scheme," they should first test those theories via the individuals with knowledge of how Plaintiffs' insurance claim was handled. Stated differently, this case presents an even easier factual scenario for the Court than *Evans* presented because, here, Plaintiffs have not deposed adjusters or supervisors with direct, substantive involvement in reaching the decision made for Plaintiffs' insurance claim—a step which already had been exhausted in *Evans* but still was not sufficient to allow for the depositions of noninvolved managerial employees. Subjecting Ms. Manduca to a deposition based on mere speculation that she *may* have information not available from other sources exceeds the bounds of permissible discovery. *Schultz*, 2016 WL 3149686 at *3 ("Mere speculation that information might be useful will not suffice."). At best, Ms. Manduca's testimony would be cumulative of any testimony from those who actually handled Plaintiffs' insurance claim.

Plaintiffs' attempt to depose Ms. Manduca before deposing (or seeking to depose) a single member of the claims personnel who were directly responsible for the handling of Plaintiffs' insurance claim is regularly rejected by other courts and should be rejected here. *Cf. Todd v. Ocwen Loan Servicing, Inc.*, No. 219CV00085JMSDLP, 2019 WL 8272621, at *3 (S.D. Ind. Dec. 13, 2019) ("Plaintiff has yet to take a deposition in this case, but desires to start that process at the top of the food chain with the former CEO of the Defendant's parent company .... [W]hat the Plaintiff forgets, however, is that this case is limited to a single-plaintiff consumer protection matter regarding the handling of [Plaintiff's] mortgage loan. This is not a nationwide collective action; if it were, deposing an executive may

10

potentially be relevant, proportional, and permissible."). Plaintiffs have not established that Ms. Manduca had any connection to, or has any knowledge of, the handling of their insurance claim. *See Evans*, 216 F.R.D. at 518–19. Plaintiffs have available to them a much less intrusive and burdensome means to prosecute their claims, and until they avail themselves of that option and demonstrate what—if any—unique, relevant knowledge Ms. Manduca may have relating to their claims, the Court should not allow her deposition to proceed.

## CONCLUSION

WHEREFORE, State Farm respectfully requests that the Court grant its motion to quash the Manduca Notice and for a protective order preventing the deposition of Nicole Manduca.

Respectfully submitted,

/s/ *Paige A. Masters*
Timila S. Rother OBA #14310
Paige A. Masters, OBA # 31142
Amanda M. Finch, OBA #34650
**CROWE & DUNLEVY, P.C.**
Braniff Building
324 N. Robinson Avenue, Suite 100
Oklahoma City, OK 73102
Telephone: (405) 235-7700
Facsimile: (405) 239-6651
timila.rother@crowedunlevy.com
paige.masters@crowedunlevy.com
amanda.finch@crowedunlevy.com

**ATTORNEYS FOR DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of January, 2026, I electronically transmitted the foregoing document to the Court Clerk using the ECF system of filing, which will transmit a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| **Reggie Whitten** | rwhitten@whittenburragelaw.com |
| **Michael Burrage** | mburrage@whittenburragelaw.com |
| **Blake Sonne** | bsonne@whittenburragelaw.com |
| **Hannah Whitten** | hwhitten@whittenburragelaw.com |
| **John S. Sanders** | jsanders@whittenburragelaw.com |
| **Jake Denne** | jdenne@whittenburragelaw.com |
| **George Gibbs** | ggibbs@gablawyers.com |
| **James Warner** | jwarner@nixlaw.com |

/s/ *Paige A. Masters*
Paige A. Masters