**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| HEIDI BARLOW, et al. | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Case No. CIV-25-44-R |
| | ) | |
| STATE FARM FIRE AND CASUALTY | ) | |
| COMPANY, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

The are presently multiple discovery motions pending before the Court.[1] This order resolves four of those motions, each of which is fully briefed: Plaintiffs' Motion to Compel [Doc. Nos. 49, 53, 57, 65]; State Farm's Motion for Protective Order and to Quash Notice of Rule 30(b)(6) Deposition [Doc. Nos. 52, 56, 59]; State Farm's Motion for Protective Order and to Quash Deposition Notice of Nicole Manduca [Doc. Nos. 73, 78, 79, 93, 96]; and State Farm's Motion for Protective Order to Preclude Service of Third-Party Subpoena to Accenture LLP [Doc. Nos. 69, 76, 77]. After thoroughly considering all of the briefing and materials submitted by the parties, the Court finds as follows.

---

[1] On December 11, 2025, the Court held a status conference where the parties presented their positions regarding the discovery disputes in this case and whether any of the disputes were moot in light of the nearly identical discovery that has been served in other cases. As a result of the conference, the Court held the current deadlines in abeyance and ordered the parties to submit a status report within 30 days. Having reviewed the status reports, the Court finds that the stay of should be lifted and the pending discovery motions are ripe for resolution.

### *Background*

This case arises from State Farm's adjustment of an insurance claim for damage to Plaintiffs' roof. Plaintiffs assert claims against State Farm for breach of contract, breach of the duty of good faith and fair dealing, and constructive fraud/negligent misrepresentation. The Complaint alleges that Plaintiffs' home was damaged by a storm on June 17, 2023, they submitted a timely insurance claim to State Farm, State Farm performed an inadequate inspection of the property, and then wrongfully denied the claim. The Complaint also alleges that the claim denial was not an isolated occurrence but was instead part of an institution-wide "scheme" hatched by State Farm to deny storm damage claims.

The scheme allegedly starts with State Farm's "captive agents" who sell or bind a replacement cost value policy without performing an inspection of the property or disclosing secret definitions that are not included in the policy. When an insured submits a claim for storm damage, State Farm's adjusters allegedly utilize a set of bad faith claims handling tactics to deny the claim, including employing a narrow definition of hail damage that is absent from the policy, misattributing damage to a non-covered loss like "wear and tear" or "granular loss," misstating the date of loss, manipulating damage findings to ensure the losses fall below the policy deductible, and employing hand chosen engineering firms that will rubber-stamp the adjusters' misrepresentations.

Plaintiffs briefing in the present motions expounds on the alleged scheme.[2] They contend that the scheme originated when State Farm's Property and Casualty Claims

---

[2] Notably, this case is but one of many cases brought by Plaintiffs' counsel against State Farm alleging that a claim denial was the result of the alleged scheme. The parties' briefing

Department decided to investigate ways it could reduce its indemnity payments on roof claims. State Farm purportedly created the Wind & Hail Fire Model Enhancement Team to oversee the effort, which was called the Wind/Hail Focus Initiative. The Wind/Hail Focus Initiative resulted in the alleged implementation of the bad faith claims handling tactics described in the Complaint as well as a new directive that prevented claims adjusters from issuing a full roof replacement without managerial approval. As Plaintiffs describe it, State Farm first deployed the scheme as a pilot program in Texas in June 2020, then moved it to other states, including Oklahoma. Plaintiffs allege that the denial of their claim was a part of the scheme, as evidenced by the adjuster's manipulating the date of loss, finding only limited damage that conveniently fell below the deductible, attributing damage to non-covered losses, and using a "functional damage" definition that is absent from the policy.

Against that backdrop, Plaintiffs have submitted a slew of discovery requests and a broad-ranging 30(b)(6) Notice. State Farm has indicated that it is willing to produce certain claim-specific information, but generally objects to the remaining discovery as irrelevant, overly broad, and unduly burdensome. Plaintiff also seeks to depose Nicole Manduca, the leader of the Wind & Hail Fire Model Enhancement Team, and to obtain documents from Accenture, a consultant that worked with State Farm.

---

indicates that the discovery disputes in this case are largely duplicative of discovery disputes that have arisen (and in some cases been resolved in the plaintiff's favor) in other actions pending in state court. Nevertheless, this Court has an independent obligation to assess the whether the discovery requests are adequately tethered to the claims and defenses in this case and fall within the scope of discovery as set out in Federal Rule of Civil Procedure 26.

### *Standard of Decision*

Federal Rule of Civil Procedure 26(b)(1) provides that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

The scope of discovery under this rule is broad, but it "is not without limits and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995) (internal quotation omitted). When the relevance of a particular discovery request "is not readily apparent, the party seeking the discovery has the burden to show the relevance of the information requested." *Barton v. Tomacek*, No. 11-CV-0619-CVE-TLW, 2012 WL 4735927, at *4 (N.D. Okla. Oct. 3, 2012). Conversely, when the discovery request appears relevant, the party resisting the request has the burden of showing that the request falls outside the scope of permissible discovery. *Id.* To meet this burden, the objecting party must present specific arguments and "may not rely on boilerplate, generalized, conclusory, or speculative arguments." *Pruess v. Presbyterian Health Plan, Inc.*, 579 F. Supp. 3d 1235, 1240 (D.N.M. 2022)

Federal Rule of Civil Procedure 30(b)(6) sets out the standard for deposing a corporation. It provides that a deposition notice to an organization "must describe with reasonable particularity the matters for examination" and the deponent "must testify about

4

information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). At minimum, this standard requires the topics in the deposition notice to "be stated with enough specificity to allow the corporation to designate and prepare a representative to testify." *Edwards v. Scripps Media, Inc.*, 331 F.R.D. 116, 121 (E.D. Mich. 2019). Additionally, the scope of discovery articulated in Rule 26(b) applies to a Rule 30(b)(6). *Id.*

Last, Rule 26(c)(1) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." But the Court may also, on its own, limit discovery that is unreasonably cumulative, can be obtained from some other source that is more convenient, less burdensome, or less expensive, or that it outside the scope of permissible discovery. Fed. R. Civ. P. 26(b)(2)(C)).

### *Discussion*

### A. **Plaintiffs' Motion to Compel**

In resolving Plaintiffs' motion to compel, the Court is mindful of the broad scope of discovery, but also its obligation to limit discovery that is cumulative, unduly burdensome, or disproportionate. Plaintiffs allege the denial of their insurance claim was the result of a company-wide scheme to reduce indemnity payments. Importantly, Plaintiffs' allegations in this regard are not mere conclusory assertions that State Farm has some generic bad faith pattern and practice. Rather, they have alleged, and further described in their briefing, the details of the scheme and how it worked in Plaintiffs' case. Plaintiffs are entitled to proportional discovery to explore these theories and State Farm's

refrain that only documents related to Plaintiffs' individual claim are discoverable is not persuasive. Additionally, although State Farm is certainly entitled to argue to a jury that there was nothing improper or nefarious about its actions, those types of merits-based arguments are premature at this point. The overarching question in the present motion is whether the discovery requests seek material that is relevant and proportional to the claims, not whether the inferences to be drawn from the evidence favors State Farm. That said, many of Plaintiffs' discovery requests are not sufficiently tailored to the claims or utilize omnibus phrases about producing "any and all" documents that "relate" in any way to a topic such that it is difficult to discern the contours of the request. *See Ward v. Liberty Ins. Corp.*, No. CIV-15-1390-D, 2018 WL 991546, at *3 (W.D. Okla. Feb. 20, 2018) (noting that "omnibus phrases" in discovery requests such as "all documents regarding" can be "facially overly broad"). With that framework in mind, the Court turns to the specific requests at issue.

Interrogatory Nos. 26, 27, 28, 29: Rule 33(a)(1) limits the number of written interrogatories to 25, unless otherwise stipulated or ordered by the court. These requests are denied.

Interrogatory Nos. 5, 18 and Request for Production Nos. 4, 6: On their face, these requests are overly broad and disproportionate. The requests are expansively worded and encompass policies, guidelines, and training provided to claims handling personnel about topics that potentially have no connection to the claims and allegations in this case. Although courts have discretion to modify discovery requests to bring them within acceptable limits, the Court declines to do so here. *Punt v. Kelly Servs.*, 862 F.3d 1040,

1047 (10th Cir. 2017). The parties are responsible for propounding proper discovery requests and are in a better position to narrow their requests. State Farm has indicated that it is willing to produce the policies used in adjusting Plaintiffs' claim and the training transcripts and materials for the personnel that adjusted Plaintiffs' claim. Plaintiffs' motion to compel responses to these requests is denied, with the exception of the material State Farm has agreed to produce.

Interrogatory No. 19: This request seeks policies, procedures, and training materials related to "functional damage" and coverage limitations based on the size and severity of the claim. Policies or training on these topics relates to Plaintiffs' allegations that Defendants utilized hidden or narrow definitions of hail damage to deny claims. To the extent the request is not duplicative of material State Farm has already agreed to produce, Plaintiffs' motion to compel a response to this interrogatory is granted, but limited to the policies, procedures, and training that applied to the adjustment of Plaintiffs' claim or the policies, procedures, and training that was provided to the personnel that adjusted Plaintiffs' claim.

Request for Production No. 30: This request seeks "all documents related to the 'Art of the Conversation.'" Although other documents in the record suggest that this was some sort of training document, Plaintiffs' motion to compel does not explain what this document is or why it is related to their claims. This request is therefore denied.

Request for Production No. 40: This request seeks documents reflecting whether State Farm or its agents have a duty to keep abreast of the condition of a property upon renewal. The request is related to Plaintiffs' allegation that State Farm wrongfully denied

their claim based on pre-existing damage or wear and tear despite previously renewing the policy without reporting any of these alleged issues with the property. However, the request is overly broad and disproportionate in that it appears to seek communications and documents without any temporal limitation or connection to the policies that actually applied to Plaintiffs' claims. Accordingly, this request is granted, but limited to documents/ correspondence sent to the agent/personnel that actually renewed Plaintiffs' policy or policies/procedures that were in effect at the time of Plaintiffs' claim.

Request for Production No. 42: This request seeks all Wind/Hail Claims Guidelines from January 1, 2019 to present. State Farm's response brief indicates that it is willing to produce Wind/Hail Guidelines for the years 2020 and 2021. Plaintiffs contend the alleged scheme began in 2020 and have not adequately explained why claims guidelines post-dating the adjustment of Plaintiffs' claim are relevant. This request is therefore granted, but limited to Wind/Hail Guidelines from 2019 through the adjustment of Plaintiffs' claim.

Interrogatory No. 10 and Request for Production Nos. 5: These requests seek information about the training provided to State Farm insurance agents. The requests are overly broad on their face in that they encompass all training provided to agents without regard to whether that training has anything to do with the claims in this case. Additionally, the agent was previously dismissed from this lawsuit. These requests are denied.

Interrogatory Nos. 15, 16, 17 and Request for Production Nos. 8, 9, 10, 11, 12: These requests seek information and documents about State Farm's relationship with Haag following jury verdicts nearly twenty years ago finding that State Farm's reliance on Haag engineering reports was pretextual or that Haag lacked objectivity. Plaintiffs argue that

8

State Farm's relationship with Haag is relevant to their claims because State Farm utilized Haag training as part of its Wind/Hail Initiative scheme. Fair enough, but these specific requests are not tailored to discovering information about the use of Haag training as part of the alleged scheme and instead seek "all documents" that are "related" to State Farm's relationship with Haag during an overly lengthy period of time. Although discovery is broad, it is not intended to be a fishing expedition. These far-ranging requests are overly broad and not adequately tethered to the specific claims in this case. As the parties are in a better position to narrow the requests, the Court denies these requests but instructs the parties to confer about limiting the requests to more specific documents or topics.

Request for Production Nos. 31, 34: These requests seek "all documents" related to the "Haag Refresher" and the "Haag Education Hail and Wind Assessment Video Series." However, Plaintiffs have failed to explain how these specific items are connected to their claim. Although the Court could make certain assumptions about what they show and how they are related, the Court will not guess. State Farm has objected to these requests as overly broad and irrelevant and Plaintiffs have not put forth a sufficiently specific argument explaining what these videos are or how they fall within the scope of permissible discovery. The requests are therefore denied.

Interrogatory Nos. 6, 7, 13: These requests seek the names and job title of State Farm personnel and outside consultants that served on the Wind and Hail Fire Model Enhancement Team or Hail Focus Initiative as well as a description of the initiative. The requests are limited from 2019 to present. Plaintiffs allege that the Wind and Hail Fire Model Enhancement Team created the Hail Focus Initiative, which resulted in the use of

9

bad-faith claims handling tactics in their specific case. Given these allegations, the information sought by these requests is within the scope of discovery. Further, any proportionality concerns appear to be limited given that State Farm has already provided at least a partial description of the initiative in its briefing. *See* Doc. No. 53 at p. 12-13. These requests are therefore granted, although the time period is limited from 2019 to the adjustment of Plaintiffs' claim.

Interrogatory No. 9: This request seeks identification of training or information that was disseminated to State Farm agents nationwide regarding the Wind and Hail Fire Model Enhancement Team or the Hail Focus Initiative from January 1, 2019 to present. Although the agent is not a party to this action, changes in the way State Farm trains its personnel to evaluate wind and hails claims relates to Plaintiffs' allegation that State Farm engaged in bad faith and constructive fraud in underwriting the policy and denying the claim. The request is therefore granted, but limited to the training and communications regarding the the Wind and Hail Fire Model Enhancement Team or Hail Focus Initiative that was actually disseminated to the agent or personnel involved in the procurement of Plaintiffs' policy or the handling of Plaintiffs' claim from 2019 to the date of Plaintiffs' claim.

Requests for Production Nos. 14, 15, 21, 22, 24, 27, 39: These requests seek "all documents" that are "related to" the Fire Model Enhancement on Wind/Hail, the Hail Focus Initiative, and other similar topics. Some of the requests are limited to 2019 to present, others appear to seek a broader time frame. As previously noted, given the claims in this case, proportional discovery into the Wind and Hail Fire Model Enhancement Team and the Hail Focus Initiative is appropriate. However, Plaintiffs' request for "all

10

documents" that are "related" to the topics makes it difficult to identify the outer limit of the request and renders the requests overly broad. As the parties are in a better position to narrow the requests, the Court denies these requests but instructs the parties to confer about limiting the requests to more specific documents or topics.

Request for Production Nos. 29, 33, 35: These requests seek all documents related in any way to "enhanced emphasis on Claim Handling Hygiene," ten years' worth of communications on "MyBlock," and "Claims and Agency Weather Event Topic Discussions." But again, Plaintiffs have not adequately explained in their motion to compel what these are or how they will produce information relevant to their claims. Additionally, some of this material is likely subsumed by other requests to produce relevant training, policies, or communications and it is therefore duplicative. These requests are therefore denied.

Request for Production Nos. 23, 36, 37, 38, 43: These requests seek "all correspondence" and documents sent or received by specific State Farm employees that "refer[] or relat[e]" to the Wind and Hail Fire Model Enhancement Team, Hail Focus Initiative, or other wind/hail quality focus initiatives. Once again, while proportional discovery into the Wind and Hail Fire Model Enhancement Team and the Hail Focus Initiative is appropriate, the use of omnibus phrases in these requests renders them overly broad and sweeps in information that may be privileged or is otherwise too attenuated to fall within the scope of discovery. The requests are therefore denied and the parties are instructed to meet and confer in a good faith effort to narrow the requests.

11

Interrogatory No. 21 and Request for Production No. 25: These requests seek analyses related to adjusters' authority to approve full roof replacements without managerial approval and documents memorializing enterprise-wide rules regarding the need for management approval of full roof replacement claims. State Farm's response brief indicates that it is willing to produce "personal rules" that were triggered in the handling of Plaintiffs' claim but that it does not track rules that were not triggered and does not have any responsive documents with respect to program rules. Written policies or procedures requiring adjusters to obtain managerial approval of full roof replacements are within the scope of discovery and these requests are therefore granted, but are limited to the time period from 2019 to the adjustment of Plaintiffs' claim.

Request for Production No. 26, 32, 41: These requests seek documents related to "quality plans" and initiatives, including plans to reduce or track indemnity payments and plans to track a reduction in full roof replacement approval percentages nationwide from 2019 to present. State Farm has agreed to produce the Quality Plan in effect at the time of the date of loss. However, information reflecting a change in State Farm's policies surrounding the adjustment of roof claims for hail damage is related to Plaintiffs' allegation that State Farm intentionally put in place practices that would reduce indemnity payments. These requests are granted, but only as to the actual quality plans or initiatives for the time period from 2019 through the adjustment of Plaintiffs' claim.

Interrogatory Nos. 11, 12, 14, 20, 21, 24, 25 and Request for Production Nos. 7, 13, 16, 17, 18, 19, 20, 28: These requests seek identification and production of cost/benefit analyses or tracking data related to adjustment of storm claims, the use of Haag, use of

engineering services, roof replacements, the effect of requiring managerial approval for roof claims, and the percentage of roof claims. The requests have varying time frames and geographical limits. Plaintiffs argue that information showing that State Farm tracked the effectiveness and implementation of the alleged scheme is relevant to their bad faith claim. The Court agrees that information showing that State Farm tracked the implementation and effectiveness of the alleged scheme is within the scope of discovery, but some of the requests utilize a time period that is too long or language seeking "all documents related" to a topic that is too broad. The requests are therefore granted, but limited to the actual analyses and reports that are responsive, from 2019 to the adjustment of Plaintiffs' claim, and only as to Oklahoma for any state specific data requested.

Interrogatory Nos. 3, 22, 23: These requests ask State Farm to identify other civil cases or claims with varying features. The requests are limited to Oklahoma from 2019 to present. Interrogatory No. 3 seeks information that does not track with facts alleged here and is therefore not relevant. The remaining two interrogatories appear more closely aligned with Plaintiffs' allegations. However, State Farm objects on the ground of undue burden and has supported its objection with an affidavit explaining that there are limitations on how it can electronically filter its claim files and counsel's estimate that it would take over 40,000 hours to manually review the documents. Based upon this information, and the minimal relevance of the requested information, the Court concludes that State Farm has met its burden of showing that responding to these interrogatories would be unduly burdensome and not proportional to the needs of this case. These requests are therefore denied.

Request for Production No. 44: This request seeks all documents produced in several other cases. Plaintiffs have not adequately shown that all documents produced in the other cases would fall within the scope of discovery for this case and the request is therefore denied.

### B. Motion to Quash 30(b)(6) deposition

The Court turns next to State Farm's Motion seeking a protective order and to quash the 30(b)(6) deposition notice. State Farm initially complains that Plaintiffs are seeking far ranging discovery via a corporate representative deposition notice before they have deposed any personnel involved in the handling of Plaintiffs' claim. But the tools of discovery may generally be used in any sequence and the Court is not persuaded that deposing a corporate representative before deposing the claims adjusters is inappropriate. *See* Fed. R. Civ. P. 26(d)(3).

However, the Court agrees with State Farm that many of the topics described in the notice are overly broad or seek irrelevant information. For example, the deposition notice requests testimony about CLUE, a claim information exchange database. However, Plaintiffs do not adequately explain how this relates to their claims, which do not allege that inaccurate information was reported to CLUE. Plaintiffs also seek wide-ranging testimony on State Farm's relationship with Haag but, as previously noted, some of this information is too attenuated in time and subject matter to fall within the scope of discovery. Plaintiffs' topics regarding State Farm's relationship with its agents are also overly broad, particularly given that the agent is not a party in this case.

It is the Court's intent to limit the deposition topics in accordance with its ruling in the motion to compel. The Court therefore instructs the parties to meet and confer in a good faith attempt to narrow the deposition topics in accordance with this order. For most topics, a relevant time frame will be from 2019 to the adjustment of Plaintiffs' claim. If there are any outstanding disputes after the parties confer, they may present those narrowed disputes to the Court for resolution.

### C.  Motion to Quash Deposition of Nicole Manduca

State Farm also moves to quash or stay the deposition notice issued to Nicole Manduca, the leader of the Wind/Hail Fire Model Enhancement Team. State Farm contends that Ms. Manduca's testimony is not relevant because she did not have any involvement in Plaintiffs' specific claim and Plaintiffs' have not adequately articulated a connection between the scheme and their claims decision. The Court disagrees with this assessment. Plaintiffs have adequately shown that Ms. Manduca was involved in the Wind/Hail Fire Model Enhancement Team, which allegedly generated the claims handling tactics that underlie Plaintiffs' bad faith claim. Thus, Ms. Manduca likely has personal knowledge of issues that are relevant and proportional to the claims asserted in this case. *See Wiesman v. State Farm*, No. CIV-25-00050-JD (W.D. Okla. April 3, 2026) (denying motion to quash deposition of Ms. Manduca). The Court further finds that consolidation of Ms. Manduca's deposition with the deposition ordered in *Wiesman v. State Farm Fire & Cas. Co.,* No. CIV-25-00050-JD (W.D. Okla. April 3, 2026) is warranted. *See Cook v. State Farm Fire & Cas. Co.*, No. CIV-25-1098-R, (W.D. Okla. May 7, 2026).

15

### D. Motion for Protective Order to Preclude Service of Third-Party Subpoena to Accenture LLP

Last, the Court considers State Farm's Motion to Preclude Service of a subpoena issued to Accenture. State Farm purportedly worked with Accenture on certain aspects of the Wind/Hail Initiative. Plaintiffs Notice of Subpoena seeks broad categories of documents about "industry standards" for wind/hail claims used in connection with its work with State Farm.

The notice was served in violation of Local Rule 45.1(b), which states that a notice of subpoena shall not be served on a third-party if a motion to preclude service is filed. For that reason, the notice is quashed.

Additionally, the Court finds that a protective order precluding service of the subpoena is warranted because the topics described in the notice are largely duplicative of discovery that has already been served on State Farm.[3] Under Fed. R. Civ. P. 26(b)(2)(C), the Court must limit the extent of discovery if the discovery sought is unreasonably duplicative or could be obtained from some other source that is more convenient. Rule 45(d) similarly requires courts to enforce the attorney's duty to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Thus, although "there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party,…[c]ourts may refuse

---

[3] Plaintiff does not dispute that State Farm has standing to challenge the subpoena. But even if State Farm lacks standing "a court may exercise its inherent authority to limit irrelevant or non-proportional discovery requests pursuant to Federal Rule of Civil Procedure 26(b)(2)(C)." *Copeland v. C.A.A.I.R., Inc.*, No. 17-CV-564-TCK-JFJ, 2020 WL 972754, at *3 (N.D. Okla. Feb. 28, 2020).

discovery requests aimed at nonparties in cases where the same testimony or documents could instead be obtained from a party to the action." *Black Card, LLC v. VISA U.S.A.*, Inc., No. 15-CV-027-S, 2016 WL 7325684, at *3 (D. Wyo. May 9, 2016) (internal quotation and citations omitted).

Plaintiffs do not dispute that much of the material sought from Accenture overlaps with material that it is already seeking from State Farm. Because the material can be obtained from another source in a more convenient and less burdensome manner, the Court grants State Farm's request for a protective order. Plaintiffs should first seek the information from State Farm. The Court will then be in a better position to evaluate any remaining disputes about obtaining the requested documents, either from State Farm or from a third-party.

### *Conclusion*

As outlined above, Plaintiffs' Motion to Compel is granted in part and denied in part. State Farm's Motion for Protective Order and to Quash Notice of Rule 30(b)(6) Deposition is granted in part, and the parties are directed to confer in a good faith effort to narrow the topics. State Farm's Motion for Protective Order and to Quash Deposition Notice of Nicole Manduca is denied. State Farm's Motion for Protective Order to Preclude Service of Third-Party Subpoena to Accenture LLP is granted. Where appropriate, documents or testimony should be produced under a protective order.

IT IS SO ORDERED this 12th day of May, 2026.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE